NONCONFIDENTIAL
VERSION

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| THE ALUMINUM ASSOCIATION TRADE ENFORCEMENT WORKING GROUP, ET AL., | ) ) ) ) |
| **Plaintiffs,** | ) ) |
| v. | ) ) |
| UNITED STATES, | ) ) |
| **Defendant.** | ) ) ) |

Court No. 21-00618

## COMPLAINT

The Aluminum Association Trade Enforcement Working Group and its individual members, Gränges Americas Inc.; JW Aluminum Company; and Novelis Corporation (collectively, "Plaintiffs") through their attorneys, allege and state as follows:

## JURISDICTION

1.      This Court has jurisdiction pursuant to 28 U.S.C. § 1581(c), as this action is brought pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and (a)(2)(B)(i).

2.      Plaintiffs contest certain factual findings and legal conclusions in the United States Department of Commerce's ("Commerce" or "the Department") less than fair value investigation of <u>Certain Aluminum Foil from Turkey</u> (Commerce Case No. A-489-844). The Department's final determination was published as <u>Certain Aluminum Foil From the Republic of Turkey: Final Affirmative Determination of Sales at Less Than Fair Value</u>, 86 Fed. Reg. 52,880 (Dep't Commerce Sept. 23, 2021) (hereinafter, "Final Determination") and the accompanying <u>Issues and Decision Memorandum for the Final Affirmative Determination in the Less-Than-</u>

NONCONFIDENTIAL
VERSION

Fair-Value Investigation of Certain Aluminum Foil from the Republic of Turkey (Dep't Commerce Sept. 16, 2021) (hereinafter, "Issues and Decision Memorandum"). Following the U.S. International Trade Commission's issuance of its final unanimous affirmative injury determination,[1] Commerce published an antidumping duty order on imports of certain aluminum foil ("CAF") from Turkey. See Certain Aluminum Foil From the Republic of Armenia, Brazil, the Sultanate of Oman, the Russian Federation, and the Republic of Turkey: Antidumping Duty Orders, 86 Fed. Reg. 62,790 (Dep't Commerce Nov. 12, 2021) (hereinafter, the "Order").

## STANDING OF PLAINTIFFS

3.      The individual members of the Aluminum Association Trade Enforcement Working Group are manufacturers, producers, and/or wholesalers in the United States of the domestic product that is like certain aluminum foil. Additionally, the Aluminum Association Trade Enforcement Working Group is a trade or business association, a majority of whose members manufacture, produce, or wholesale the domestic like product in the United States. Plaintiffs were Petitioners in the underlying agency investigation and actively participated in the investigation as parties to the proceeding. As such, Plaintiffs are interested parties within the meaning of section 771(9)(C) and (E) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1677(9)(C), (E), and Plaintiffs have standing to bring this action pursuant to 28 U.S.C. § 2631(c).

---

[1]      Aluminum Foil From Armenia, Brazil, Oman, Russia, and Turkey; Determinations, 86 Fed. Reg. 62,845 (USITC Nov. 12, 2021) (hereinafter, "USITC Final Determination").

NONCONFIDENTIAL
VERSION

## TIMELINESS OF THIS ACTION

4.      The <u>Order</u> issued as result of Commerce's <u>Final Determination</u> and the <u>USITC</u> <u>Final Determination</u> was published in the <u>Federal Register</u> on November 12, 2021 (86 Fed. Reg. 62,790).  Pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and U.S. CIT Rule 3(a), a Summons was filed within 30 days of the date on which the <u>Order</u> was published in the <u>Federal Register</u> (<u>see</u> ECF No. 1, dated December 10, 2021) and this Complaint is being timely filed within 30 days of the filing date of the Summons.

## STATEMENT OF CLAIMS AND BASIS FOR RELIEF

### COUNT I

5.      Paragraphs 1 through 4 above are re-alleged and incorporated herein by reference.

6.      When the Department "has reasonable grounds to believe or suspect that sales of the foreign like product under consideration for the determination of normal value have been made at prices which represent less than the cost of production of that product," the Department "shall determine whether, in fact, such sales were made at less than the cost of production."  19 U.S.C. § 1677b(b)(1).  Further, if the Department "determines that sales made at less than the cost of production": (1) "have been made within an extended period of time in substantial quantities"; and (2) "were not at prices which permit recovery of all costs within a reasonable period of time," the Department may disregard such sales in calculating normal value.  <u>Id.</u>

7.      "Cost of production" is defined by the statute as "an amount equal to the sum of" the following: (1) "the cost of materials and of fabrication or other processing of any kind employed in producing the foreign like product, during a period which would ordinarily permit the production of that foreign like product in the ordinary course of business"; (2) an amount for

Case 1:21-cv-00618-N/A   Document 11   Filed 01/07/22   Page 4 of 7

NONCONFIDENTIAL
VERSION

selling, general, and administrative expenses based on actual data pertaining to production and sales of the foreign like product by the exporter in question;" and (3) "the cost of all containers and coverings of whatever nature, and all other expenses incidental to placing the foreign like product in condition packed ready for shipment." 19 U.S.C. § 1677b(b)(3).

8.     Commerce chose a single mandatory respondent for examination in the underlying antidumping investigation -- Assan Aluminyum Sanayi Ve Ticaret A.S. ("Assan Aluminyum"), as well as its affiliate Kibar Dis Ticaret A.S. ("Kibar Dis") (collectively, "Assan").[2]

9.     In its final determination, Commerce allowed Assan's net hedging related gains to offset the company's cost of manufacture.  See Issues and Decision Memorandum at Comment 9.  In explaining its basis for this determination, the Department stated that "Assan provided specific record evidence and demonstrated that the net hedging gains were directly associated with the purchases of its aluminum material inputs."  Id.  The Department also stated that the footnotes of Assan's audited financial statement "state that the company enters into commodity contracts to mitigate its risk on aluminum price fluctuations (i.e., raw material inputs, not finished goods)."  Id.  As a result, Commerce found that "Assan's hedging activities and associated net hedging gains are related to Assan's aluminum purchases."  Id.

10.     Commerce's finding is not supported by substantial evidence and is otherwise not in accordance with law.  While Commerce determined that Assan's hedging gains are "associated" with its purchases of aluminum, that finding is insufficient, because the record also

---

[2]     In its respondent selection memorandum, Commerce identified these entities as if they were two separate mandatory respondents.  Assan submitted a single response to the Department's questionnaire throughout the investigation, however, as all parties were aware Assan Aluminyum and Kibar Dis were affiliates that would be treated as single entity.

NONCONFIDENTIAL
VERSION

establishes that Assan's hedging contracts are "associated" with its *sales* of finished goods.  In fact, the hedging contracts analyzed by Commerce concern the London Metal Exchange ("LME") or metal premium portion of Assan's purchases and sales, *not the input materials or finished goods themselves*. Additionally, the footnotes to Assan's audited financial statements do not state that Assan enters into commodity contracts "to mitigate risk on . . . raw material inputs," as Commerce erroneously stated.  As a result, neither of the cited bases for Commerce's determination support the agency's finding that hedging activities are related to Assan's purchases of aluminum input materials – and not its sales prices.

11.     The record also contains substantial evidence that detracts from Commerce's finding that the agency failed to address. The purpose of a hedging contract is to manage the risk of an uncertain future event (e.g., future movements in LME aluminum prices). Assan enters into hedging contracts **after** purchasing raw materials.  Thus, at the time Assan enters into its hedging contracts, the purchase of raw materials is a past event, with no uncertainty left for Assan to manage. Accordingly, because Assan's purchase of hedging contracts occurs subsequent to its purchase of raw materials, those hedging contracts are not associated with the raw materials purchases.  Because the Department did not address this detracting evidence, its determination is not supported by substantial evidence.

## COUNT II

12.     Paragraphs 1 through 11 above are re-alleged and incorporated herein by reference.

13.     The Department's rejection of Plaintiffs' alternative argument made during the administrative proceedings – that if the Department treats Assan's hedging-related gains as an

NONCONFIDENTIAL
VERSION

offset to its cost of production, those gains should be incorporated into Assan's financial expense ratio – is unsupported by substantial evidence and is not otherwise in accordance with law.

14.     The Department's first basis for rejecting the Plaintiffs' underlying argument is that "Assan's net hedging gains are recorded as a part of cost of goods sold in its audited financial statements." Issues and Decision Memorandum at Comment 9. While this is correct, Assan also records [                                              ] and the Department's practice is to include [                                              ] As a result, Commerce's first basis for denying Petitioners' underlying argument is arbitrary – in that two hedging-related items that are similarly situated in Assan's audited financial statement are being treated differently by Commerce without any explanation.

15.     The record also contains substantial detracting evidence that Commerce failed to address in its final determination.

    a.  Assan  classifies  [


];

    b.  Assan's  [

]; and

    c.  As Commerce acknowledges, Assan does not use the hedging contracts to actually purchase anything, rather, at maturity, Assan closes each contract with a reverse transaction, thus indicating the hedging contracts are merely for risk management of Assan's finances.

Because the Department did not address any of this detracting evidence, its determination is not supported by substantial evidence.

**NONCONFIDENTIAL**
**VERSION**

16.     The second basis for the Department's rejection of Plaintiffs' alternative argument during the administrative proceedings is that Assan's hedging related gains "relate to aluminum purchases used in the production of merchandise under consideration."   As discussed in paragraph 9, which is re-alleged herein, this finding is not supported by substantial evidence.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

(a)     Determine that Commerce's Final Determination is not supported by substantial evidence and is not otherwise not in accordance with law with respect to the claims advanced by Plaintiffs in this Complaint;

(b)     Remand the Final Determination to Commerce with instructions to correct the errors set forth in this Complaint; and

(c)     Provide such other relief as this Court deems just and appropriate.

Respectfully submitted,


 /s/ John M. Herrmann
JOHN M. HERRMANN
PAUL C. ROSENTHAL
JOSHUA R. MOREY
JULIA A. KUELZOW
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC  20007
(202) 342-8400

Counsel to Plaintiffs

Dated: January 6, 2022